IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SUE ANN WARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:11-cv-147-TFM |
| | ) | [wo] |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM  OPINION AND ORDER

Sue Ann Ward ("Complainant" or "Plaintiff" or "Ward") filed applications under

Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33 and 1381-83c,

respectively, on February 20, 2007, for a period of disability which allegedly began on

August 15, 2005.   (Tr. 164-71, 180-86).   Ward's application was denied (Tr. 61-79) and

after missing the original court date on January 29, 2008, due to being hospitalized with

pneumonia (Tr. 437-41) she testified at a hearing before an Administrative Law Judge

("ALJ") on April 16, 2009.   (Tr. 51-54, 29-50).   The ALJ issued an unfavorable decision

on June 30, 2009.   (Tr. 13-15).   The Appeals Council considered additional information

after initially rejecting review on August 27, 2010, (Tr. 7-9) but affirmed its own decision

to reject any further review on February 4, 2011.   (Tr. 1-3).   The rejection of review made

the ALJ's decision the final decision of the Commissioner of Social Security

("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Ward timely filed her administrative appeal.

The Court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and the parties consent to the undersigned rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636 (c)(1) and M.D. Ala. LR 73.1.  *See also* Docs 12 and 13.  For the reasons that follow, the Court AFFIRMS the Commissioner's decision.

## I. NATURE OF THE CASE

Ward seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits and supplemental security income.  United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence.  42 U.S.C. § 405 (2006).  The Court may affirm, reverse and remand with instructions, or reverse and render a judgment.  *Id.*

## II. BACKGROUND

Ward was born on February 5, 1956, and was 49 years old at the time of her alleged onset date and 53 years old at the time of the ALJ's decision.  (Tr. 164, 28).  Ward has an eighth grade education and no GED.  (Tr. 33).  Ward testified that her disabilities include chronic headaches occurring 5 or 6 times a month which last for "2 or 3 days at a

---

[1] Pursuant to the Social Security Independence and program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred tot he Commissioner of Social Security.

time." (Tr. 31-50). Ward also testified to suffering from numbness in arms and legs, pain in neck and shoulder, a chemical imbalance that affects her mental capacity, depression and anxiety, and hepatitis C. *Id.*

The ALJ found Ward suffers from the following severe impairments: "Major Depressive Disorder, Anxiety Disorder, Postherpetic Trigeminal Neuralgia, Headaches, Borderline Intellectual Functioning, Hepatitis C, and back/neck pain[]." (Tr. 19). The ALJ found that none of these impairments, either individually or collectively, "meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 20).

Ward presented medical evidence which spans fifteen years. Ward was evaluated by Dr. Charles R. Hicks, Jr., M.D., in July and November of 2001. Dr. Hicks opines that ward suffers from Dysthymia, a "relational problem related to mental disorder." (Tr. 247-50). Dr. Hicks stated Ward has an "[o]ccupational problem" but is otherwise "unremarkable" in multiple aspects of her evaluation. *Id.* From March 2004, through May 2007, Ward was seen four times at the Southeast Alabama Medical Center Emergency rooms for chronic headaches, chest pain, and neck/shoulder pain. (Tr. 251-79, 409-15).

Ward presented medical records from Family Practice of Abbeville from May 1993, through April 2006. (Tr. 280-338). The Family Practice of Abbeville records indicate that Ward has headaches, was in a car wreck in May 2003, as well as complaints

of pain in her neck and shoulder, plus a Hepatitis C diagnosis.  Several records indicate

that Ward smokes one and a half packs of cigarettes a day.  *Id*.  Other items mentioned

are Ward's "cold intolerance," glasses, ulcers, rash, arm and hand pain, claims of

depression, and other ailments.  *Id*.  It is notable that the headaches are repeated several

times throughout these records, almost always accompanied by a request to be excused

from work, but "[b]rain parenchyma shows no signal abnormality or mass effect" with the

impressions or brain scans being "unremarkable."  (Tr. 334).  The three heart

examinations note "no evidence of acute or active cardiac or pulmonary disease" between

December 1997 and December 2001.  (Tr. 336-338).

Ward submitted medical records from SpectraCare concerning her mental health

treatment from October 2006, through January 2009.  (Tr. 341-73, 475-89).  A

reoccurring theme through these records is the development and implementation of

"coping skills."  *Id*.  It is noted on August 22, 2006, after the alleged onset date when

Ward testified that she was no longer working that "[s]he reports not really interacting

with others with exception to talking to people at work."  (Tr. 346).  Ward demonstrated a

"fluctuating self-esteem and poor relationship choices" including living "with addicted

roommate."  (Tr. 348, 354).

Dr. David C. Gostley, Psy.D., evaluated Ward on April 9, 2007, and diagnoses

Ward as one with "Borderline Intellectual Functioning" commenting that "her

intelligence is expected to remain the same."  (Tr. 374-76).  Ward was seen on April 10,

2007, by Dr. Sam R. Banner, M.D., for a physical evaluation for "chronic headaches, neck and back pain." (Tr. 377-82). Dr. Banner's diagnoses Ward as suffering from headaches, chronic neck and back pain, hepatitis C, and depression. *Id*. He also noted that "claimant will need long term medical care." (Tr. 380). Dr. Banner evaluated Ward again on May 15, 2009. (Tr. 465). Dr. Banner's diagnosis Ward with chronic cervical spine and back pain, hepatitis C, and depression. *Id*. Notably the diagnosis did not include headaches.

The Residual Functional Capacity Assessment performed on April 12, 2007, by Dr. Amy Prisoc, M.D., put no limits on Ward's manipulation skills, visual abilities, or ability to communicate. (Tr. 383-90). Some limits were placed on Ward's posture in that she could not climb ladders, ropes, or scaffolds. *Id*. In view of the history of normal exams on record Dr. Prisoc noted that "[c]laimant's statements are considered partially credible." (Tr. 388). Furthermore, the RFC states

> There is no documentation to support frequency and severity of headaches and past CT of brain was normal. Statements are not fully supported by MER in file.

*Id*.

The psychiatric review and RFC-Mental of Ward was done on May 9, 2007, Dr. Gordon J. Rankart, Psy.D. (Tr. 391-409). Dr. Rankart found Ward suffers from depression but found only moderate limitations in maintaining social functioning and maintaining concentration, persistence, or pace. *Id*. Mild limitation was found in daily

living activities and no episodes of decompensation were noted.  *Id*.  Dr. Rankart stated

that Ward's "ability to understand remember and carry out instructions as well as respond

appropriately to supervisors, co-workers and work pressures in a work setting is mildly to

moderately impaired, ability to function independently and manage finances is

unimpaired." (Tr. 403).  Dr. Rankart also noted that there was "[n]o current psych meds

or counseling" and that Ward was "[c]apable of simple-task employment." *Id*.

Ward was seen for evaluations from June 2008, through April 2009, at the Primary

Care of Southwest Georgia.  (Tr. 415-26, 443-52).  Ward met with Jane L. Gordon, FNP,

and Dr. Ruth Evans, M.D., wherein her depression with anxiety was noted but she was

also assessed multiple times for "[t]obacco use disorder" and pneumonia.  *Id.*

A psychological evaluation on May 18, 2009, by Dr. J. Walter Jacobs, Ph.D.,

concludes Ward suffers from "Major Depression, Recurrent, Mild to Moderate."  (Tr.

453-61).  Dr. Jacobs stated that "Ward has a long history of depression and has been

treated intermittently throughout her life."  While assessing her daily activities Dr. Jacobs

noted:

> Ms. Ward lives in a rent-free apartment.  She arises early each morning
> remarking that she is "used to working."  She has breakfast and starts
> chores.  During the morning, she will often nap in a chair or watch
> television.  She washes clothes and cleans house.  Her favorite pastime is
> listening to music and collecting coupons.  In the past, she has enjoyed
> reading, but has lost interest in this activity.

(Tr. 456).  When commenting on her judgment and insight Dr. Jacobs said it was

"[g]rossly intact" and that relating to her thought process "[t]here was no loosening of

association, confusion or tangentiality."  (Tr. 455).  Ward was given a moderate

restriction on carrying out complex instructions, in her ability to make judgments on

complex work-related decisions, and understanding/remembering complex instructions.

(Tr. 458).  Ward was mildly restricted in understanding and remembering simple

instructions, carrying out simple instructions, and making judgments on simple work-

related decisions.  *Id.*

     As noted above, Dr. Banner performed another medical evaluation on May 15,

2009, at which time his diagnoses of Ward was "Chronic Cervical Spine and Back Pain,"

Hepatitis C, and depression.  (Tr. 465).  There was no diagnosis for headaches in Dr.

Banner's 2009 diagnosis, which is in contrast to a diagnosis for chronic headaches in his

2007 medical evaluation of Ward.  *Compare* (Tr. 380) *with* (Tr. 465).

     Ward attended therapy again from September 2008 until April 2009, at the

Wiregrass Mental Health Board, Inc., where Ward repeatedly stated that "things have

been going well with her and [she] didn't have any personal issues to discuss."  (Tr. 490-

96).

### III. STANDARD OF REVIEW

     The Court reviews a social security case to determine whether the Commissioner's

decision is supported by substantial evidence and based upon proper legal standards.

*Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  The Court "may not decide the

facts anew, reweigh the evidence, or substitute [its] judgment for that of the

Commissioner," but rather it "must defer to the Commissioner's decision if it supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (stating the court should not re-weigh the evidence). The Court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelly v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) and *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)); *Foote*, 67 F.3d at 1560 (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401, 91 S.Ct. at 1427).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court

must view the record as a whole, taking into account evidence favorable as well as

unfavorable to the decision.  *Foote*, 67 F.3d at 1560 (citing *Chester*, 792 F.2d at 131).

    The district court will reverse a Commissioner's decision on plenary review if the

decision applies incorrect law, or if the decision fails to provide the district court with

sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton*

*v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal

citations omitted).  There is no presumption that the Secretary's conclusions of law are

valid.  *Id.; Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

## IV. STATUTORY AND REGULATORY FRAMEWORK

    The Social Security Act's general disability insurance benefits program ("DIB")

provides income to individuals who are forced into involuntary, premature retirement,

provided they are both insured and disabled, regardless of indigence.[2]  *See* 42 U.S.C. §

423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate

and distinct program.  SSI is a general public assistance measure providing an additional

resource to the aged, blind, and disabled to assure that their income does not fall below

the poverty line.[3]  Eligibility for SSI is based upon proof of indigence and disability.  *See*

---

    [2] DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes.  *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

    [3] SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). Despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986). Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to:

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner of Social Security employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

(1)   Is the person presently unemployed?
(2)   Is the person's impairment(s) severe?
(3)   Does the person's impairment(s) meet or equal one of the specific

impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?[4]
   (4)    Is the person unable to perform his or her former occupation?
   (5)    Is the person unable to perform any other work within the economy?
          An affirmative answer to any of the questions leads either to the next
          question, or, on steps three and five, to a finding of disability.  A
          negative answer to any question, other than step three, leads to a
          determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  Claimants establish a prima facie case of qualifying disability once they meet the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[5] ("grids") or hear testimony from a Vocational Expert (VE).  *Id*. at

---

[4] This subpart is also referred to as "the Listing of Impairments" or "the Listings."

[5] *See* 20 C.F.R. pt. 404 subpt. P, app. 2; *see also* 20 C.F.R. § 416.969 (use of the grids in SSI cases).

1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## V. STATEMENT OF THE ISSUES

Plaintiff's brief is not a model of clarity. As best as the Court is able to determine, the Plaintiff raises the following issues:

1.) Whether the ALJ erred in his Residual Functional Capacity (RFC) assessment by not considering Dr. Banners' opinion regarding Ward's limitation on handling and fingering.

2.) Whether the ALJ erred in giving greater weight to the state agency assessments over a treating physician.

3.) Whether the ALJ erred in failing to include any mental limitations in the RFC without articulating why the mental limitations were excluded.

4.) Whether the ALJ erred in finding Ward not credible.

5.) Whether the ALJ erred by not providing adequate explanation as to the difference between the Dictionary of Occupational Titles (DOT) reasoning level and the RFC demands.

The Court will address the first three issues together as a matter of weight to be applied to the evidence provided by the different medical sources, with the fourth and fifth issue being handled individually. The issues and arguments turn upon this Court's ultimate

inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and by substantial evidence. *See Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987).

## VI. DISCUSSION AND ANALYSIS

**A.    The ALJ followed established Eleventh Circuit requirements in the RFC assessment, appointed credibility and weight of the evidence to medical opinions, considered the mental imitations in the RFC all while providing explanations supported by substantial evidence.**

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R.§ 404.1545 (a)).  The "determination of residual functional capacity is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v. Apfel*, 100 F.Supp.2d 1323, 1330 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546, *Lewis v. Callahan*, 125 F.3d at 1440). "The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman v. Barnhart*, 220 Fed. Appx. 957, 959-60 (11th Cir. 2007) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 11th Cir. 1981) (when considering the specificity required the court stated, "[w]hile the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence found that it did not support the level of disability [plaintiff] claimed.").

When considering treating physician's opinions in relation to the RFC, this Court looks also to the weight afforded each medical opinion.  An ALJ "may reject any medical opinion if the evidence supports a contrary finding."  *Williams v. Astrue*, 416 Fed. Appx. 861, 863 (N.D. Fla. 2011) (quoting *Sharfarz v. Bowne*, 825 F.2d 278, 280 (11th Cir. 1987)).  That an ALJ discredits the opinion of a consulting physician, or even that of a treating physician for good cause is not error.  *Phillips*, 357 F.3d at 1241; *Lewis*, 125 F.3d at 1439-41.  Scrutiny of the evidentiary record compels this Court to conclude that the ALJ did not err in according less weight to the opinion of Dr. Banner about Ward's health and functional limitations.

Substantial weight must be given to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise.  *Phillips*, 357 F.3d at 1241.  Good cause exists if the opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records.  *Id.* at 1241-42.  The ALJ must give "explicit and adequate reasons for rejecting the opinion of a *treating physician*."  *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (emphasis added).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the medical evidence supporting the opinion; consistency with the record as

a whole; specialization in the medical issues at issue; and other factors which tend to support or contradict the opinion.  20 C.F.R. § 404.1527.

After a thorough review of the medical records and the opinion of the ALJ, the Court agrees with the ALJ's statement that Dr. Banner's opinion is "drastically inconsistent with the entire treatment record and is only supported, according to his own notes, by the claimant's reported history."  (Tr. 26).  After scrutinizing the medical records, the ALJ properly noted that Dr. Banner examined Ward on two occasions but that "[h]is own examination report does not even support the extent of his opinions."  *Id*. *See Phillips*, 357 F.3d at 1241; *see also Heppell-Libsansky v. Comm'r of Social Security*, 170 Fed. Appx. 693 (11th Cir. 2006) (ALJ did not err in refusing to accord controlling weight to treating physician's opinion because physician only saw claimant twice after the alleged onset date and other evidence in record showed periods of improvement). Furthermore, the ALJ notes that Dr. Banner's opinion "is also contradicted by the claimant's own reported activities of daily living, and the other medical opinion evidence and medical treatment notes."  *Id*.  Consequently, Dr. Banner's opinion is not entitled to be given controlling weight and the ALJ properly followed Eleventh Circuit requirements for explaining why a treating physician's medical opinion is not given controlling weight. *See Elam*, 921 F.2d at 1215.  *See also* 20 C.F.R. § 404.1527.

After finding that Dr. Banner's opinion should be accorded no weight, the ALJ properly found that Ward's limitations on handling and fingering should not be

considered as limitations in the RFC.  The ALJ also noted that "the claimant has no other treatment or treating medical opinion to suggest such limitations." (Tr. 24).  Additionally, the ALJ, as well as the examining physicians, took into consideration all mental limitations.  (Tr. 25-26).  The ALJ noted Ward's mental limitations are minor in that "Dr. Jacobs states that the claimant is only mildly impaired in her ability to interact appropriately with the public, with supervisors, or with coworkers." (Tr. 25).  The Court recognizes that Ward claims severe mental health impairments; however, "there is little evidence to support substantial limitations other than her allegations of psychological limitations." *Id.*  The Court finds that the ALJ properly established the RFC, assigned medical weight to the treating physicians opinions, and included mental limitations with the physical ones in the overall RFC assessment when he stated:

> In sum, the above residual functional capacity assessment is supported by the claimant's infrequently reported physical symptoms, the lack of substantial prescribed pain medications, the lack of substantiating clinical signs or diagnostic test results, the significant activities of daily living reported, the lack of psychological treatment, the effectiveness of psychological medications, the mild reported psychological symptoms, the psychological opinion of Dr. Ghostly, the psychological opinion of Dr. [] Rankart, and the psychological opinion of Dr. Jacobs.

(Tr. 26).

**B.**     **The ALJ did not error in rejecting Ward's testimony concerning the pain and resulting limitations imposed by the combination of her medically determinable impairments**.

The Court finds the ALJ's assessment of Ward's credibility to be proper and supported by substantial evidence where in the complaints are incompatible with the

claimant's testimony and records of daily activities.  *Brown v. Astrue*, 298 Fed. Appx. 851,

853 (11th Cir. 2008) (the court rejected a challenge to the ALJ's finding that the claimant's

allegations of pain and fatigue were not credible in citing the incompatibility of the

claimant's testimony and the medical records in evidence.).

The Eleventh Circuit stated "there is no rigid requirement that the ALJ specifically

refer to every piece of evidence in his decision so long as [his] decision . . . is not a broad

rejection which is 'not enough to enable [a court] to conclude that the ALJ considered [a

claimant's] medical condition as a whole.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th

Cir. 2005) (quoting *Foote*, 67 F.3d at 1561, *see also Mixon v. Astrue*, 2011 WL 867213, *6

(M.D. Ala. 2011) (quoting *Dyer*).  In *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir.

1983), the Eleventh Circuit held "this circuit does not require an explicit finding as to

credibility," but will accept the implications which are obvious to the reviewing court.  It is

the duty of the ALJ to develop a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272,

1275 (11th Cir. 2003).  The burden of proving disability still rests on the claimant, and the

claimant is responsible for producing evidence that supports her claim and allows the ALJ

and the Commissioner to reach the proper conclusion.  *Id*. at 1276; 20 C.F.R. § 416.912(a).

If a claimant is represented by counsel, the ALJ does not have a heightened duty to develop

the record.  *Leiter*, 377 Fed. Appx. at  949.  An impairment is not severe if it does not

significantly limit the claimant's physical or mental ability to do basic work activities. 20

C.F.R. § 404.1521(a); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Once

again, "a clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562 (citing *MacGregor*, 786 F.2d 1050).

"[T]hough the ALJ did not specifically reference the reports, his statement that his findings were made after consideration of the entire record are sufficient to support this Court's finding that he did, in fact, consider the information." *Mixon,* 2011 WL 867213, *6. When the Court, after reviewing the entirety of the record of proceedings, is able to determine that the ALJ considered Ward's medical condition as a whole, it is then considered to be substantially supported and is not the purview of the Court to simply overrule the ALJ's decision. *Newsome ex rel. Bell. v. Barnhart*, 444 F.Supp.2d 1195, 1197-98 (M.D. Ala. 2006) (quoting *Dyer*, 395 F.3d at 1211). "An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *McCray v. Massanari*, 175 F.Supp.2d 1329, 1336 (M.D. Ala. 2001) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

The Court recognizes that the ALJ may use its discretion to apply the amount of credit to Ward's testimony of pain and other symptoms so long as the ALJ articulates the reasons for that decision. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (wherein the court held that because the ALJ did not set out why the testimony was discredited, the complainant's testimony was held to be true). When using his discretion, the ALJ must articulate the reasons for discrediting a witness' testimony. *See Jones v. Dep't. of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (stating that the ALJ must give reasons

that are based on substantial evidence if he or she choose to discredit the claimant's testimony).  The ALJ discussed the inconsistencies within the medical records as well as found that Ward's daily activities also suggest capability to perform significant work activity.  (Tr. 23-27).  Furthermore, the ALJ found that a functional capacity evaluation demonstrated Ward's ability to perform the physical demands of her previous employment.  *Id*.

The Court holds that the ALJ explicitly detailed why he chose to discredit Ward's subjective testimony in compliance with Eleventh Circuit law.  (Tr. 25).  When discussing the limitations due to frustration or anxiety, the ALJ stated "her allegations are not supported by the medical evidence."  *Id*.  The ALJ also found Ward provided no substantiation or record of treatment, that Dr. Jacobs stated that "the claimant is only impaired in her ability to interact appropriately with [others]" and that Ward lost her position as an egg sorter because the plant closed, not due to her mental or physical impairments as she claimed in her testimony.  *Id*.  Furthermore, the ALJ notes that Ward's "allegations are unsubstantiated by her lack of treatment."  *Id*.  Dr. Jacobs, the most recent examiner, was directly quoted by the ALJ in relation to the validity of the assessments conducted by himself as well as other treating physicians and the results were "'most likely, it is a combination of deliberately exaggerating symptoms and random responding.'"  *Id*.  The ALJ quotes Dr. Jacobs again when the profile is labeled as a "'fake bad' profile causing the assessment of severity to be inaccurate."  *Id.*  It was found by the ALJ that "all of the psychologists fail to support the extent of her allegations of her mental impairments."  *Id.*

It is true that the ALJ in this case did not employ any signal phrases such as "Ward is not credible because . . ." or "objective medical findings indicate untruthful testimony. . ." A full reading of the opinion with respect to the credibility of Ward indicates the ALJ had sufficient evidence to discount the testimony from Ward that she is disabled and cannot work. Notwithstanding the ALJ's failure to highlight her credibility with specific language, the juxtaposition of Ward's testimony compared to the balance of the medical evidence convinces this Court that the ALJ articulates adequate grounds for his findings. The ALJ's reasons to reject Ward's testimony were implicit, and do not provide grounds for reversal. The Court finds that the ALJ gave sufficient weight and consideration to all evidence in accordance with 20 C.F.R § 404.1529 and SSR 96-7p, as well as gave sufficient reasoning within the opinion as to why the ALJ chose not to credit Ward's testimony. *See Holt*, 921 F.2d at 1223.

## C.   **There was no conflict between the Vocational Expert's testimony and the Dictionary of Occupational Titles**.

The ALJ correctly addressed the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"). Ward contends that there was not sufficient explanation as to any differences between the DOT and the RFC demands but the Court finds that no conflict exists and any potential conflict was resolved during the hearing.

The ALJ "has the obligation of developing a full and fair record regarding the vocational opportunities available to a claimant." *Allen v. Sullivan*, 880 F.2d 1200, 1201

(11th Cir. 1989); *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988). This burden may sometimes be met through exclusive reliance on the grids. *Id*. at 1201-02. However, "'exclusive reliance on the grids is not appropriate either when the claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.'" *Id.* at 1202 (quoting *Walker v. Bowen*, 826 F.2d 996, 1002–03 (11th Cir. 1987) (quoting *Francis v. Heckler*, 749 F.2d 1562, 1566 (11th Cir. 1985). Normally, when nonexertional limitations are alleged, "the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert." *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986) (citing *Cowart v. Shweiker*, 662 F.2d 731, 736 (11th Cir. 1981). "'It is only when the claimant can clearly do unlimited types of light work, ... that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.'" *Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir. Unit A, March 1981)). "The burden of showing by substantial evidence that a person who can no longer perform his former job can engage in other substantial gainful activity is in almost all cases satisfied only through the use of vocational expert testimony." *Chester v. Bowen*, 792 F.2d 129, 132 (11th Cir.1986). If an ALJ finds that a claimant cannot perform a full range of work within a given exceptional level, VE testimony is the preferred method to determine whether the claimant's non-exceptional impairments further diminish her ability to work at that level 20 C.F.R. §§

404.1561, 416.961; Social Security Ruling (SSR) 83–12; *see also Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995).

In *Jones v. Apfel,* the court addressed the issues surrounding conflicts between the DOT and the testimony of a VE. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (The ALJ relied upon VE testimony regarding the range of sedentary work available to the plaintiff, even those that conflicted with the DOT, while considering the specific limitations of the plaintiff). The Eleventh Circuit noted that in the Sixth Circuit the "social security regulations do not require the Commissioner or the VE to rely on classifications in the DOT." *Id*. (citing *Con v. Sec'y of Health and Human Services*, 51 F.3d 607, 610 (6th Cir. 1995). This frees courts to rely on the VE's testimony "even if it is inconsistent with the DOT." *Id*. The Eleventh Circuit also noted that the Eighth and the Ninth Circuits "hold that the DOT controls unless it can be 'rebutted ... with VE testimony that shows that 'particular jobs, whether classified as light or sedentary, may be ones that a claimant can perform.'" *Id*. (quoting *Montgomery v. Chater*, 69 F.3d 273, 276 (8th Cir. 1995) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995)). If the VE can "determine whether there are jobs in the region which the claimant can perform with [their] precise disabilities or limitations" the court then held that "the DOT *does not control*." *Id*.(citing *Montgomery*, 69 F.3d at 277) (emphasis added).

Subsequent to the *Jones v Apfel,* decision the Social Security Administration passed *SSR 00-4p: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence,*

*and Other Reliable Occupational Information in Disability Decisions*.  In the pertinent history of this administrative regulation it states that, "[q]uestions have arisen about how we ensure that conflicts between occupational evidence provided by a VE or a VS and information in the DOT [] are resolved."  SSR 00-4p.  "Social Security Rulings are agency rulings 'published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.'"  *Leonard v. Astrue*, 487 F.Supp.2d 1333, 1339 (M.D. Fla. 2007) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n. 9, 110 S.Ct. 885, 891 n. 9, 107 L.Ed.2d 967 (1990) (quoting 20 C.F.R. § 422.408)(1989)).

*Leonard v. Astrue*, arose after both the *Jones v. Apfel,* case as well as the issuance of SSR 00-4p.  *Id.*  In *Leonard*,  the plaintiff argued that because SSR 00-4p was enacted after the *Jones* opinion, that the new law "requires the ALJ to elicit a 'reasonable explanation' for a conflict between the VE testimony and the DOT." *Id.* at 1338.  The court noted that in SSR 00-4p "the Social Security Administration recognized that the VE's testimony should generally be consistent with the information contained in the DOT" but when a conflict between the two arises that "the SSR directs that the ALJ 'must elicit a reasonable explanation for the conflict before relying on the VE['s testimony].'"  *Id*. at 1338-39.  "Moreover, the ALJ is obligated to inquire on the record as to whether there are any inconsistencies between a VE's testimony and the DOT."  *Id*. at 1339.  Finally, any conflict must be addressed and resolved by the adjudicator and explained how the conflict was resolved.  *Id*.

The ALJ and the VE discussed multiple deviations in Ward's case.  (Tr. 47-50).  After directly answering the questions presented by the ALJ counsel for Ward was able to directly ask the VE any questions and stated:

> Q.    The only question I was going to ask him, is, is – *if the Claimant's testimony was deemed to be credible by the judge*, would she be able to do her past work, or any work, on a sustained basis?
>
> A.    No, ma'am.

(Tr. 49) (emphasis added).  No questions were raised regarding the DOT coding of the job, the nature of it being "unskilled work in the light category" or the SVP number 2 being applied to the job.  Id. at 47-48.   The ALJ specifically questioned the VE about the limitations of the fingering and handling limitations, as presented by Ward, and the impact of those limitations on the VE's overall assessment.  *Id*.  Through the detailed examination of the VE, as well as the specific questions from the ALJ, it was clearly established that there is no conflict but rather more than the VE's assessment the issue balanced on the claimant's credibility, which, as discussed above, was found to be less credible.   The ALJ did not assume the that the VE's testimony "trumps" the DOT in this conflict, but rather applied the greater scrutiny of the SSR 00-4p by stating "[i]n accordance with SSR 00-4p, the vocational expert's testimony is consistent with the information contained within the *Dictionary of Occupational Titles*."  (Tr. 27).   *See Leonard,* 487 F.Supp.2d at 1338-39.

In *Leonard*, "the ALJ did not acknowledge the apparent conflict between the VE's testimony and the DOT."  487 F.Supp.2d at 1340.  Due to this fault in questioning, the case was remanded to resolve the existing conflict.  *Id*.  Such is not the case.  Indeed, no conflict

exists as alleged.  Moreover, there was ample opportunity to question the VE.  Substantial evidence exists to find that the ALJ reasonably relied on the VE's testimony, along with all of the other evidence in the record to conclude that Ward's credibility was diminished and no further limitations need be placed on her ability to perform previous employment.  The Court finds that there is no reversible error.

## V. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law.  It is, therefore, ORDERED that the decision of the Commissioner is AFFIRMED.  A separate judgment will be entered.

DONE this the 27th day of February, 2012.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE